RONALD T. ABBOTT, Plaintiff-Appellee, v. GRIFFITH H. FERRELL, JR., Defendant-Appellant.

Third District    No. 80-148

Opinion filed January 14, 1981.

James L. Tappa, of Spector, Tappa, Kopp & Nathan, of Rock Island, for appellant.

Ronald C. Taber, of Collinson, Taber & Darrow, Ltd., of Milan, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Dr. Ronald T. Abbott, plaintiff, and Dr. Griffith H. Ferrell, Jr., were partners in the business of providing emergency room services to several hospitals in Illinois, Iowa, and North Dakota. Their medical partnership was known as Drs. Abbott and Ferrell, with offices in Moline, Illinois. In late 1977 the partners decided to terminate their partnership as of December 30, 1977, and after negotiating terms, they executed a dissolution agreement dividing the partnership debts and accounts receivable between the two partners and providing a formula to equalize the division by a payment of cash. The debts and accounts receivable were divided as provided in the agreement, but the equalizing payment was not made because the parties were unable to agree upon the interpretation of the formula provision. Plaintiff filed suit, seeking $28,688.34 from defendant, and defendant filed a counterclaim asking the court to determine the amount of credits due under an unwritten agreement to dissolve a leasing partnership between the same parties. Following a bench trial in the Circuit Court of Rock Island County, judgment was entered in favor of plaintiff on both the complaint and counterclaim, and defendant has appealed.

According to the testimony appearing in the record, the partnership had two different types of arrangements with the hospitals for whom emergency room services were provided. Some hospitals paid the partnership a flat contractual fee, while three hospitals (two in North Dakota and one in Illinois) used a "fee for service" arrangement whereby the partnership would bill each emergency room patient and would be responsible for collecting its bills directly from the patients. These accounts receivable were posted by each hospital, and some hospitals were more current than others. Consequently at the time the dissolution agreement was entered into, the exact amounts of the accounts receivable were not immediately ascertainable. Also, since some of the accounts would not be collectible, the accounts receivable would not be worth the full amount of their face value.

Paragraph 3 of the dissolution agreement provided that plaintiff was to assume the debts which the partnership owed to two banks in North Dakota and that defendant was to assume the debts owed to two banks in Illinois. In paragraph 4 of the agreement, the accounts receivable were divided with plaintiff to receive those from the two North Dakota hospitals and defendant to receive those from an Illinois hospital. Paragraph 4 further provided:

"The parties hereto shall make an adequate adjustment to compensate one party or the other on the basis of the following equation:

$$\frac{\text{Debt obligation of Abbott under Paragraph No. 3}}{\text{Accounts Receivable of Abbott under Paragraph No. 4}} = \frac{\text{Ratio of Debt to}}{\text{Accounts Receivable for Abbott}}$$

$$\frac{\text{Debt Obligation of Ferrell under Paragraph No. 3}}{\text{Accounts Receivable of Ferrell under Paragraph No. 4}} = \frac{\text{Ratio of Debt to}}{\text{Accounts Receivable for Ferrell.}}$$

It is the intent of the parties hereto that the ratio of debt to Accounts Receivable shall be equalized by the payment of cash from the party with the lower ratio to the party with the higher ratio."

It is this equation that gives rise to the litigation now before us. Other provisions of the agreement dealt with other assets and obligations of the partnership and are not involved in this appeal.

Plaintiff testified that during negotiations he knew the exact amounts of the debts that each party would assume as of December 31, 1977, but he used estimates as to the accounts receivable. Plaintiff also stated that it

was his understanding the debt would not be affected by the equalizing payment but rather that the accounts receivable would be adjusted. He said, that while he did not know the exact per cent of the receivables he would be able to collect, he could make an educated guess and that was what was done.

The accountant for the partnership, Robert Wolf, testified to the dollar values of the debts and accounts receivable as of December 31, 1977, as follows:

Accounts Receivable:

| | |
|---|---:|
| Illinois Hospital (defendant) | $ 95,713.62 |
| North Dakota hospitals (plaintiff) | 143,765.09 |

Notes payable:

| | |
|---|---:|
| Illinois banks (defendant) | 32,064.23 |
| North Dakota banks (plaintiff) | 82,500.00. |

Wolf also testified that in order to equalize the two ratios as required in the agreement, it would be necessary to anticipate the percentage of collectibility of the accounts receivable and that the collectibility could be predicted with reasonable accuracy on the basis of past collection history. However, he said, neither doctor asked him to make a computation as to collectibility, although that factor was discussed.

Defendant testified that at the time the dissolution agreement was negotiated the accounts receivable could not be determined because the billings were so far behind. He also stated that approximately $35,000 of his $95,000 accounts receivable were "questionable" and that plaintiff had about $31,000 bad accounts out of $143,000.

At the conclusion of the trial and at the request of the trial court, defendant submitted a computation showing that the ratio of total debts over total accounts receivable equaled 47.83 percent; that Ferrell's ratio was 33.5 percent; that Abbott's ratio was 57.38 percent; and that the ratios could be equaized by Ferrell assuming $13,737.16 of the debt assigned to Abbott. The trial court did not order the debts adjusted, but instead entered judgment for plaintiff.

On appeal, defendant argues that the trial court gave the dissolution agreement an unreasonable construction, leading to absurd results, when judgment was entered in favor of plaintiff who sought an adjustment by the payment of a cash amount. Defendant insists that the only reasonable interpretation of the contract requires an adjustment to the debts since the debt figure was a liquidated, definite amount at the time the contract was drawn up. Since the contract made no reference to collectibility, defendant thinks it obvious that an adjustment to accounts receivable only was not contemplated. Defendant discusses his own testimony concerning collectibility and urges us to conclude that he would have to use almost

half of his accounts receivable to pay the judgment, which would result in the financial imbalance the agreement attempted to prevent.

Plaintiff responds that the contract language was clear and unambiguous, that the parties made no allowance for the collectibility of the various accounts receivable, that the contract should be enforced according the plain language of its provisions,· and that the cash adjustment should be made without reference to the quality of the accounts receivable, as ordered by the trial court. Plaintiff also points out that, even if the contract were found to be ambiguous, any ambiguity should be construed against defendant since defendant drafted the agreement. (*E.g., Bank of Silvis v. Boultinghouse Auction Co.* (1979), 71 Ill. App. 3d 98, 389 N.E.2d 267.) Plaintiff also asserts that the evidence was sufficient to sustain the judgment of the trial court, and that defendant should not be allowed to obtain a reformation of a contract which he drew where his own testimony indicates that he was aware of the collectibility factor at the time the contract was drawn.

■■ We must agree that the language of the contract does not provide for an adjustment based upon collectibility. The formula provision merely requires the parties to equalize the ratio between the debts and the accounts receivable assigned to each partner and quite clearly does not require an equalization of accounts actually or potentially collected. There is evidence indicating that the parties decided not to spend an additional sum to have their accountant work out collectibility percentages but instead left the success of collections up to each doctor. Rather than reaching an "absurd result," we believe that, to the contrary, the trial court correctly applied the accepted rule of contract construction that the agreement be given a fair and reasonable interpretation based upon a consideration of all its language, and the result reached was as intended. (*Tartar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272.) Accordingly, we affirm the judgment in favor of plaintiff upon the complaint.

■■ Defendant also contends that the trial court erred in denying his counterclaim since his testimony and that of Wolf was uncontradicted as to his claim for certain credits. A careful review of the record indicates that defendant offered evidence relating to a number of items which he claimed entitled him to credits against the sum which he owed plaintiff. Three of these items involved expenses paid by the medical partnership, which defendant testified should have been paid by plaintiff alone. However, neither defendant's answer nor his counterclaim contains any allegation relating to credits arising out of the medical partnership dissolution, and hence, the court could not properly consider such claims which were not pleaded.

Two other items of credit related to the dissolution of a second

partnership between the same partners which was named A and F Leasing and which held title to two airplanes and several cars for use by the medical partnership. According to the testimony, the parties terminated the leasing partnership and divided the assets without a written dissolution agreement. The accountant prepared a work sheet showing the basis and the debt for each asset held by the leasing business, and stated that the parties agreed to divide the assets and liabilities equally. He also testified that plaintiff owed defendant $2,205.52 in order to equalize the division of property.

Defendant stated that the accountant's work sheet represented the agreement of the parties and that plaintiff also owed him $2,000 which was one-half of the sale price of a 1975 Lincoln Continental which defendant sold to plaintiff. In addition, defendant testified to the sale of an airplane, but the effect of that sale upon the division of assets is not apparent. Plaintiff offered no evidence relating to the dissolution of A and F Leasing.

We believe defendant sustained his burden of proof as to $4,205.52 that plaintiff owed him as a result of the A and F Leasing dissolution and that such sum should be a credit against the medical partnership payment which defendant owed to the plaintiff. We hold, therefore, that the trial court erred in entering judgment in favor of plaintiff on the counterclaim, and we reverse that portion of the judgment. We enter judgment, as authorized by Supreme Court Rule 366(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)), finding plaintiff liable for $4,205.52 on the counterclaim.

Affirmed in part; reversed in part.

ALLOY, P. J., and STOUDER, J., concur.